UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMBER SCOTT | CIVIL ACTION |
| VERSUS | NO: 18-8175 |
| MANDEVILLE CITY ET AL. | SECTION: "H" |

## ORDER

Before the Court is a Motion for Summary Judgment (Doc. 58) filed by the City of Mandeville, Mayor Donald J. Villere, the Mandeville Police Department, Mandeville Police Chief Gerald Sticker, and Officer Terry Guillory (collectively, the "Mandeville Defendants" or "Defendants"). For the following reasons, the Motion is **GRANTED**.

## BACKGROUND

Plaintiff Amber Scott filed suit against Defendants alleging that she and her minor children suffered physical and emotional injuries when she was pulled over, detained, and arrested for driving while intoxicated. She asserts claims under 42 U.S.C. § 1983 for false arrest and excessive force, claims under 42 U.S.C. § 1985 and § 1986 for conspiracy, and other federal claims. Plaintiff also brings state law claims for negligence, false imprisonment, and vicarious liability.

Previously, this Court granted summary judgment to several Defendants, including the Greater New Orleans Expressway Commission, the Causeway Police Department, the Chief of the Causeway Police Nick Congemi, and Officer Scott Huff (collectively, the "Causeway Defendants"). The Court held that Plaintiff had insufficient evidence to support her claims. Now, the

1

Mandeville Defendants have filed a Motion for Summary Judgment, and in their Motion, they adopt the arguments raised by the Causeway Defendants in their earlier Motion for Summary Judgment.

## **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[3] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[4] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[5] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-

---

[1] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[2] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[3] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[4] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[5] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

movant would bear the burden of proof at trial."[6] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[7] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[8]

## LAW AND ANALYSIS

### I. Plaintiff's False Arrest Claim

For the same reasons her false arrest claim failed against the Causeway Defendants, Plaintiff's false arrest claim fails against the Mandeville Defendants. To prevail on a § 1983 false arrest claim, a plaintiff must show that the officer did not have probable cause to arrest her.[9] The Mandeville Defendants move the Court to grant summary judgment, arguing that Officer Terry Guillory had probable cause to arrest Scott for driving while intoxicated. "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"[10] Whether probable cause exists is judged based on the facts and circumstances within a police officer's knowledge at the moment of arrest.[11]

Defendants submitted an audio recording of the 911 call that prompted the officers to pull over Plaintiff.[12] The caller, Robert Austin, frantically

---

[6] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).
[7] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).
[8] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).
[9] Evans v. City of Meridian Miss., 630 Fed. App'x 312, 315 (5th Cir. 2015).
[10] Piazza v. Mayne, 217 F.3d 239, 245 (5th Cir. 2000) (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).
[11] Haggerty v. Tex. S. Univ., 391 F.3d 653, 655–56 (5th Cir. 2004).
[12] Doc. 58-11.

described a "really intoxicated driver" who is "all over the road." He said the situation was "very stressful." He is also heard saying, "Man, this is bad." In one of the videos submitted by Defendants, Austin tells an officer that the driver "almost took out two cars" and was going from "lane to lane." Austin can be heard saying "she almost hit me and I think we saved her life and a couple other people's lives tonight." After a while, an officer is heard saying, "She is definitely impaired on some kind of anti-depressant."

In the same video, someone is heard saying, "She hit that curb pretty hard." Plaintiff herself is heard saying her car was damaged from when she "hit a curb on [Highway] 21," although it is somewhat unclear whether Plaintiff is saying she hit a curb that same evening or sometime before. In another video of Plaintiff at the police station after being detained, one of the officers tells her she hit several curbs while she was driving that night. The officer states that the police station has a video of her hitting one curb, and she then states that she was aware that she hit the curb.

The recordings show that Plaintiff's behavior was erratic and that she was slurring her speech. In addition to this, the police report from the incident states that "Guillory detected a slur in Ms. Scott's speech."[13] The report further notes, consistent with the other evidence, that Plaintiff was "swaying slightly" during the encounter. The report states that Plaintiff told the officers she was "taking hydrocodone and Xanax daily," and it states that Plaintiff, after taking several moments to think, refused a urinalysis. Lastly, in an email from Officer Scott Huff to Officer Terry Guillory, sent hours after Plaintiff's arrest, Officer Huff details his interactions with Plaintiff. He notes that Plaintiff said she takes Xanax three times per day.[14]

---

[13] Doc. 58-6.
[14] Doc. 58-9.

4

In her opposition, Plaintiff provides no evidence to contradict that she was slurring and behaving erratically. She provides no evidence to create an issue of fact on whether her prescription medications were impairing her. Instead, she makes the conclusory assertion that "[i]t is not illegal to drive while taking prescription medication."[15] She even admits that she "had conditions in her eyes caused by the consumption of prescribed medication."[16]

Plaintiff emphasizes that Officer Guillory made inconsistent statements about whether Plaintiff passed a certain sobriety test called the Horizontal Gaze Nystagmus ("HGN") test. Plaintiff argues that a jury must make a credibility determination with respect to Officer Guillory. The Court disagrees. Even if Officer Guillory made inconsistent statements about the HGN test, the other facts and circumstances established by Defendants are enough to create probable cause to arrest Scott for driving while intoxicated. Because of this, summary judgment is warranted on Plaintiff's false arrest claim.

## II. Plaintiff's Excessive Force Claim

For the same reasons her excessive force claim failed against the Causeway Defendants, Plaintiff's excessive force claim fails against the Mandeville Defendants. To prevail on a § 1983 claim for excessive force, the plaintiff must present evidence to support the following elements: "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable."[17] "[A]n injury is generally legally cognizable when it results from a degree of force that is constitutionally impermissible—that is, objectively unreasonable under the circumstances."[18]  In determining the

---

[15] Doc. 59 at 11.
[16] *Id.*
[17] Flores v. City of Palacios, 381 F.3d 391, 396 (5th Cir. 2004).
[18] Bush v. Strain, 513 F.3d 492, 501 (5th Cir. 2008).

objective reasonableness of the force, a court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[19]

Plaintiff's Complaint does not clearly articulate the facts that support her excessive force claim, and her briefing does not do so either. In her briefing, Plaintiff points only to evidence of her alleged injury. She quotes a doctor's report that states as follows:

> The patient was previously noting benefit from treatment for her neck and right shoulder however appears to have been aggressively placed in handcuffs despite her medical condition. Her right shoulder was forcibly placed in internal rotation as well as elevation which produced several popping sounds. The patient has been having increasing pain since that time. Given the noted acute trauma the patient will be referred for MRI of the right shoulder to rule out any interval articular pathology contributing to her pain. She may likely require orthopedic reconsultation.[20]

After viewing the video of the arrest, the Court sees that the officer took Plaintiff's hands and pulled them behind her back. From the video, it seems as though he did this gently, not aggressively. Another officer stands by and seems to assist, but the two officers hardly seem to move or exert any force. Plaintiff, however, pulls away from the officers.

The evidence shows that in arresting Plaintiff, Defendants used a standard method. In the case of *Rodriguez v. Farrell*, the Eleventh Circuit found this kind of technique to be non-excessive:

> The evidence, in the light most favorable to plaintiff, shows that Sgt. Farrell grabbed plaintiff's arm, twisted it around plaintiff's back, jerking it up high to

---

[19] Graham v. Connor, 490 U.S. 386, 396 (1989).
[20] Doc. 59 at 12.

6

> the shoulder and then handcuffed plaintiff as plaintiff fell to his knees screaming that Farrell was hurting him. . . . The handcuffing technique used by Sgt. Farrell is a relatively common and ordinarily accepted non-excessive way to detain an arrestee.[21]

Notably, the *Rodriguez* plaintiff produced evidence from an orthopedic surgeon who testified that the handcuffing was a "very serious, painful event."[22] The injury led to more than twenty-five subsequent surgeries and ultimately amputation of the arm below the elbow.[23] The Eleventh Circuit expressed sympathy for the plaintiff but nonetheless found that there was no excessive force. The court wrote that "[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time."[24]

Plaintiff argues that *Rodriguez* is distinguishable because the Eleventh Circuit specifically notes that "no evidence has been presented that Sgt. Farrell knew of plaintiff's recent elbow surgery or, more important, knew that handcuffing plaintiff would seriously aggravate plaintiff's preexisting condition."[25] Plaintiff directs the Court's attention to this exchange that occurred during Plaintiff's arrest:

> Guillory: Do me a favor. Put your hands behind your back for me, okay?
>
> Plaintiff: Why?
>
> Guillory: Because right now, we're going to go to the PD. You're under arrest right now, okay?

---

[21] Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002).
[22] *Id.* at 1351.
[23] *Id.*
[24] *Id.* at 1352–53.
[25] *Id.*

7

> Plaintiff: Wait, wait. Stop. Stop moving my arm like that.
>
> Guillory: Stop turning.
>
> Plaintiff: Stop moving my --
>
> Guillory: Stop turning.
>
> Plaintiff: I had surgery, and it's fucked up.
>
> Guillory: Stop turning.
>
> Plaintiff: Please don't touch my arm.
>
> Guillory: Stop turning.[26]

Plaintiff argues that "the arresting officers in this case knew or should have known that the plaintiff was particularly susceptible to injury from the standard arrest maneuvers."[27]

As noted, the Court reviewed the videos of the incident. Before initiating the arrest, the officers had been talking to Plaintiff for a while about how they were concerned for her safety and the safety of her children. Eventually an officer tells Plaintiff, "Listen, all the tests that he just did -- you're taking something, okay?" In response, Plaintiff sounds alarmed, and she says, "I had eye muscle surgery twice, and I'm still, oh my God."

The evidence shows that Plaintiff became difficult when she learned that she was under arrest. The officer slowly takes Plaintiff's hands, and she shifts around. Even as she does, the officer uses very little force. Another officer stands by to help. After repeatedly telling her to stop turning, the officers remain calm and tell her to "stop pulling away." Moments later, Plaintiff says, "I just had shoulder surgery, and he just ripped through it on purpose." One officer says, "He didn't rip through it. You're pulling away from us. You can't do that."

---

[26] Doc. 59 at 14–15.
[27] *Id.* at 15.

Plaintiff has failed to create an issue of fact on whether the officer's use of force was objectively unreasonable. Notably, the Eleventh Circuit has retreated from the statement that Plaintiff relies on from *Rodriguez*. The Eleventh Circuit has called it dicta and stated that "[n]othing in *Rodriguez* suggests . . . that a minimal amount of force against a fragile arrestee which results in a minimal injury—of the sort that would be expected from a typical arrest of a resisting arrestee—is sufficient to support an excessive force claim."[28] Here, even if the officers knew of Plaintiff's surgery, the Court finds that using such a minimal amount of force, if they did use any, was still reasonable. The evidence shows that Plaintiff was difficult and belligerent. As the Court noted in its prior ruling, the officers took a great deal of time with Plaintiff and seemed concerned about her children. The videos show that even after making the arrest, the officers continued to be calm and cordial with Plaintiff even while she continued to be hostile. Ultimately, Plaintiff provides no evidence upon which a reasonable juror could find that these officers used excessive force in arresting her.

### III. §§ 1985 and 1986 Claims

To the extent that any § 1985 or § 1986 claims remain pending against the Mandeville Defendants, the Court dismisses them for the reasons provided in its Order and Reasons ruling on the Causeway Defendants' Motion for Summary Judgment.[29] To summarize the ruling, the Court found that Plaintiff presented insufficient evidence of a conspiracy to deprive her of her rights. In her opposition to the Mandeville Defendants' Motion, she again presents insufficient evidence of a conspiracy. Indeed, she presents no evidence of one.

---

[28] Williams v. Sirmons, 307 Fed. App'x 354, 362 (11th Cir. 2009).
[29] Doc. 50.

## IV. Other Federal Claims

The Complaint alleges that certain Defendants are liable for failure to train. These Defendants include the Mandeville Police Department, Mandeville Police Chief Gerald Sticker, Mandeville Mayor Donald Villere, and the City of Mandeville. Specifically, the Complaint alleges that these Defendants failed to adequately train, hire, supervise, reprimand, investigate the incident, and enact proper procedures.[30] "To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."[31] An official policy can arise in various forms and may arise in the form of "a widespread practice that is so 'common and well-settled as to constitute a custom that fairly represents municipal policy.'"[32] "[A] plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'"[33] "A pattern . . . requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"[34]

Plaintiff does not identify any official or specific policy in her Complaint or in her briefing opposing this Motion or the prior Motion for Summary Judgment. Indeed, in the opposition to this Motion, Plaintiff makes no attempt to save her § 1983 failure to train claims from dismissal. Because Plaintiff has failed to provide any evidence of any kind of pattern of constitutional violations, she cannot prevail on these claims.

Lastly, the Complaint alleges that the Mandeville Police Department, Chief Gerald Sticker, Mayor Donald Villere and the City of Mandeville are

---

[30] Doc. 28.
[31] Peterson v. City of Fort Worth, Tex., 588 F.3d 838, 847 (5th Cir. 2009).
[32] Pitroswki v. City of Houston, 237 F.3d 567, 579 (5th Cir. 2001) (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).
[33] *Peterson*, 588 F.3d at 850–51.
[34] *Id.* at 851 (quoting McConney v. City of Houston, 863 F.2d 1180, 1184 (5th Cir. 1989)).

independently liable for violating Plaintiff's "health, welfare, and Constitutional and other legal rights."[35] The Court sees no evidence of any involvement by Chief Gerald Sticker or Mayor Donald Villere in this incident. Plaintiff has not presented any evidence showing their involvement or their condonement of any wrongdoing. Accordingly, these claims must fail.

## V. State Law Claims

Plaintiff asserts state law negligence claims against Defendants. Plaintiff's negligence claims are subject to Louisiana's duty/risk analysis, which has five separate elements: (1) whether the defendant had a duty to conform his conduct to a specific standard; (2) whether the defendant's conduct failed to conform to the appropriate standard; (3) whether the defendant's substandard conduct was a cause-in-fact of the plaintiff's injures; (4) whether the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) whether the plaintiff was damaged.[36] A police officer has a duty to act reasonably under the totality of the circumstances.[37]

Plaintiff provides no evidence to create an issue of fact on whether the officers acted reasonably under the circumstances. As the Court has discussed, the recordings show no wrongful conduct by Defendants. Accordingly, Plaintiff's negligence claims cannot survive summary judgment.[38]

In her briefing, Plaintiff points to Louisiana law on false imprisonment. As Plaintiff notes, to prove false imprisonment, she must prove that the police

---

[35] Doc. 28.
[36] Elphage v. Gautreaux, 969 F. Supp. 2d 493, 516 (M.D. La. 2013) (citing Hanks v. Entergy Corp., 944 So.2d 564, 579 (La.2006)).
[37] *Id.* (citing Mathieu v. Imperial Toy Corp., 646 So.2d 318, 322–23 (La. 1994)).
[38] *See id.* (dismissing negligence claims against officers noting that there were no genuine issues of material fact regarding whether deputies who detained plaintiff acted reasonably under the circumstances).

11

lacked probable cause for the arrest.[39] Plaintiff asserts that "there are significant questions of fact concerning Officer Guillory's credibility insofar as it concerns plaintiff's claim of false arrest."[40] The Court disagrees. Any questions regarding Officer Guillory's credibility pale in comparison to the other evidence. For the reasons previously discussed, the Court finds no issue of fact on whether the officers had probable cause to arrest Plaintiff Scott.

Plaintiff also points to Louisiana law that allows law enforcement officers to use only "reasonable force" in effecting an arrest. For the reasons discussed regarding Plaintiff's § 1983 excessive force claims, the Court finds no issue of fact on whether the officers used reasonable force in arresting Plaintiff. These claims, therefore, fail.

### VI. Respondeat Superior Allegations

In her briefing, Plaintiff maintains that certain Defendants can be vicariously liable under Louisiana law. Given that the underlying state law claims are being dismissed, any vicarious liability claims based on them necessarily fail.

### CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 58) is **GRANTED**. Plaintiff's claims against the City of Mandeville, Mayor Donald J. Villere, the Mandeville Police Department, Mandeville Police Chief Gerald Sticker, and Officer Terry Guillory are **DISMISSED WITH PREJUDICE**. Given that no claims remain pending in this suit, the Clerk's office is instructed to close this case.

New Orleans, Louisiana, on this 10th day of July, 2020.

---

[39] Zebre v. Town of Carencro, 884 So.2d 1224, 1228 (La. App. 3 Cir. 2004).
[40] Doc. 59 at 17.

_____

**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

13